IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICKY DALE WALLACE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.:  2:12-CV-578-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Ricky Dale Wallace ("Wallace") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI") under Title XVI of the  Social Security Act (the "Act").

---

[1] The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 13, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Wallace timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act. The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **REVERSED** and **REMANDED**.

## FACTS AND PROCEDURAL HISTORY

Wallace was a fifty (50) year old male at the time of his hearing before the Administrative Law Judge ("ALJ") on March 7, 2011. (R. at 44, 51.) Wallace has an eighth grade education. He has previously worked as a wrecking mechanic and for car parts pulling companies.

Wallace filed his application for SSI on April 22, 2009, alleging an initial onset date of March 19, 2009. (R. at 89.) The Commissioner denied Wallace's application for SSI on August 3, 2009. (R. at 90–94.) Wallace requested a hearing before an ALJ. (R. at 95–97.) After a hearing, the ALJ denied Wallace's claim on April 28, 2011. (R. at 20.) Wallace sought review by the Appeals Council, but it declined his request on January 13, 2009. (R. at 42.) On that date, the ALJ's decision became the final decision of the Commissioner. Wallace then brought this action.

## **STANDARD OF REVIEW**[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F. 2d 1143, 1145–46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for SSI as well as establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months." 20 C.F.R. § 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 14, 2013.

claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform his past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ found that Wallace has not engaged in substantially gainful activity since April 22, 2009, the application date. At Step Two, the ALJ

found that Wallace had the following severe impairments: degenerative disc diseases of the lumbar spine and degenerative joint disease of the right shoulder. (R. at 25.)  Additionally, the ALJ found that Wallace has the following nonsevere impairments: status post burn injuries with skin grafting; hepatitis C; recurrent hemorrhoids; recurrent ear infections; and "nerves."  (R. at 26.)  The ALJ found these impairments, either alone or in combination, are only slight abnormalities that "cannot reasonably be expected to produce more than minimal, if any, work-related limitations."[4]  (R. at 26.)  At Step Three, the ALJ determined that Wallace's impairments, alone or in combination, do not meet or medically equal a listed impairment.  (R. at 27.)

Before proceeding to Step Four, the ALJ determined Wallace's residual functioning capacity ("RFC"), which is the most a claimant can still do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that Wallace has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: Wallace is limited to occasionally bending, stooping, and climbing; occasionally pushing or pulling with the right leg; and no overhead lifting, pushing, or pulling with the right shoulder.  (R. at 28.)

---

[4] Wallace does not challenged this administrative finding.

At Step Four, the ALJ determined that Wallace is unable to perform his past relevant work.  (R. at 30.)  At Step Five, the ALJ determined that, based on Wallace's age, education, work experience, and RFC, jobs exist in sufficient numbers in the national economy such that Wallace is not disabled.  Therefore, the ALJ denied Wallace's claim.  (R. at 31–32.)

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir. 1986)).  In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574–75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).  In particular, this court has a "<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding."  *See Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

Wallace contends that the ALJ's RFC finding is not supported by substantial evidence. Specifically, Wallace points out two reasons the ALJ's RFC finding is erroneous. First, he contends that the record contains no medical source statement from a physician regarding the functional limitations imposed by Wallace's impairments. (Doc. 7 at 8.) Second, Wallace contends that the ALJ failed to consider all the medical evidence. (Doc. 7 at 10.) Because the first issue is dispositive, the court will not address the second issue.

A claimant's RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [his] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545). In assessing a claimant's physical ability to work, the ALJ considers his ability to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *See* 20 C.F.R. § 404.1545(b). The ALJ must base his assessment on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The Regulations require the ALJ to "consider any statements about what you can still

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

do that have been provided by medical sources, whether or not they are based on formal medical examinations." Additionally, the ALJ must "consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." *Id.*

The ALJ will make the ultimate decision on what a claimant can and cannot do. *See* 20 C.F.R. § 404.1546(c). However, the ALJ is not a medical expert and is not qualified to interpret raw medical data. *See Manso-Pizarro v. Sec'y of Health & Human Serv.*, 76 F.3d 15, 17 (1st Cir. 1996); *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D.Mass 1998); *Rose v. Astrue*, No. 11-CV-1186-VEH, Doc. 10 at 17–18 (N.D.Ala. Nov. 1, 2011). "[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *See Manso-Pizarro*, 76 F.3d at 17. Conversely, when the extent of a claimant's functional loss would not be apparent to a lay person, the ALJ cannot play doctor and guess at the claimant's ability to work. *See id.*

There is no bright line rule about when an ALJ must request an MSS. In some cases, a treating physician's MSS is necessary. *See, e.g., Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003). In others, it is not. *See,*

*e.g.*, *Green v. Social Security Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (affirming ALJ's RFC assessment as supported by substantial evidence even though the ALJ discredited the only MSS in the record).  The ultimate question in each case is whether substantial evidence supports the ALJ's RFC assessment.

Here, the ALJ's RFC finding is not supported by substantial evidence.  Admittedly, Wallace's own testimony supports much of the ALJ's RFC finding.  For example, Wallace testified that he could lift 50 pounds.  (R. at 69.)  This amount would enable him to perform the lifting component of medium work.  *See* 20 C.F.R. § 404.1567(c).  Additionally, Wallace testified that he has constant pain in his right shoulder.  (R. at 58.)  The ALJ apparently credited this testimony and limited Wallace to no pushing or pulling with his right arm and no overhead lifting with his right shoulder.  (R. at 28.)

But Wallace also complained of back pain, and it is here that the ALJ's reasoning goes astray.  (R. at 54.)  Pain itself can be disabling.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is itself sufficient to sustain a finding of disability.") (citations omitted).  The Eleventh Circuit has adopted a two pronged test to determine if a claimant's pain is

disabling.  The claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)).  A claimant's subjective complaints of pain are insufficient to support a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214–15 (11th Cir. 1991).  The complaints must be supported by "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain."  *Id.*

An ALJ may discredit a claimant's testimony regarding his subjective pain. *See Wilson*, 284 F.3d at 1225.  However, if the ALJ elects to discredit a claimant's testimony, "he must articulate explicit and adequate reasons for doing so."  *Id.* Furthermore, under the Secretary's regulations, an ALJ is not entitled to "reject [a claimant's] statements about the intensity and persistence of [his] pain . . . solely

because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2).

Wallace testified that his back pain is located in the "right lower part of [his] back and [his] right leg." (R. at 54–55, 64.) Wallace said that his pain comes in spells every two months or so and that these spells lasts for about two weeks at a time. (R. at 55.) He described his pain, on a bad day, as a nine or a ten on a pain scale where 10 is the worst. (R. at 56.)

The ALJ found that Wallace's testimony about his pain did not establish his disability. (R. at 29.) The reason for the ALJ's finding is not clear. First, the ALJ said "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible . . . ." (R. at 29.) Thus, it appears that the ALJ found Wallace's allegations to be not credible. However, the ALJ also said that "the objective medical evidence simply does not support the disabling level of pain and restrictions alleged by Mr. Wallace." (R. at 30.) Thus, it appears that the ALJ may have found that Wallace failed to meet the Eleventh Circuit's pain standard. Regardless of the path the ALJ took, neither reason can sustain his RFC determination in this case.

To the extent the ALJ found Wallace's testimony not credible, the ALJ misapplied the Regulations. Under 20 C.F.R. § 404.1529(c)(2), the Secretary will

not "reject [a claimant's] statements about the intensity and persistence of [his] pain . . . solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). But here, the only reason the ALJ gave for rejecting Wallace's subjective testimony is that such testimony is not supported by the objective medical evidence. For example, the ALJ noted that Wallace "has generally exhibited normal range of motion with no positive straight leg raise tests. He is able to ambulate effectively. Moreover, motor strength and sensory examination have been normal bilaterally." (R. at 30.) If the ALJ discredited Wallace's pain testimony based solely on the objective medical evidence, he misapplied 20 C.F.R. § 404.1529(c)(2). And, if the ALJ had other reasons for discrediting Wallace's testimony, he failed to comply with Eleventh Circuit case law, which requires an ALJ to articulate clearly his reasons for rejecting a claimant's subjective pain testimony. *See Wilson*, 284 F.3d at 1225. Thus, in either event, to the extent the ALJ discredited Wallace's subjective testimony, he applied an incorrect legal standard.

Alternatively, the ALJ found that the objective medical evidence failed to satisfy the Eleventh Circuit's pain standard. If the ALJ took this path, then his RFC determination is based on nothing more than speculation and conjecture. The first prong of the pain standard requires proof of an underlying medical condition.

The ALJ found, among other things, that Wallace suffers from degenerative disc disease of the lumber spine. (R. at 25.) This finding is supported by objective medical evidence—namely, X-rays showing moderate degenerative changes in Wallace's spine as well as observations of moderate muscle spasms and tenderness. (R. at 26, 29.) Thus, Wallace satisfies the first prong of the Eleventh Circuit pain standard.

To satisfy the second prong, Wallace must show "either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225 (emphasis added). It appears Wallace has no objective medical evidence confirming the severity of his alleged pain. But, what about evidence of an "objectively determined medical condition [which could] reasonably be expected to give rise to the claimed pain?" *Id.* Can degenerative disc disease of the lumber spine reasonably be expected to cause the pain Wallace alleges?

The ALJ determined it could not. (R. at 30.) To reach this conclusion, the ALJ focused on the fact that Wallace has exhibited normal range of motion, that his straight leg tests have been negative, and that his motor strength and sensory examinations have been normal bilaterally. (*Id.*) At first glance, the ALJ's

finding may seem reasonable. But, on closer examination, it is clear that the ALJ considered the raw medical data (i.e., the doctor's reports regarding Wallace's range of motion, the results of his straight leg raise tests, and the findings about his motor strength and sensory functioning) and drew a medical conclusion. This is something the ALJ cannot do. *See Manso-Pizarro*, 76 F.3d at 17; *Rohrberg*, 26 F. Supp. 2d at 311; *Rose v. Astrue*, No. 11-CV-1186-VEH, Doc. 10 at 17–18 (N.D.Ala. Nov. 1, 2011).

The ALJ is not a medical professional. He is not trained to determine what symptoms, if any, degenerative disc disease of the lumbar spine could reasonably be expected to cause. Nor does he have experience which enables him to recognize a typical presentation of pain versus an atypical presentation. Conversely, a medical doctor has training and experience regarding the presentation of pain. She is in a much better position to determine whether a patient's allegations of pain are typical, atypical but credible, or simply not credible.

Here, the ALJ crossed the line from fact finder to doctor. He evaluated the medical records showing normal range of motion, negative straight leg tests, and normal motor strength and sensory examinations and concluded Wallace's degenerative disc disease could not reasonably be expected to cause his pain. But,

without the expertise of a medical professional, the ALJ's conclusion is nothing more than a hunch. The record contains no evidence from a medical professional which substantiates the ALJ's conclusion. In fact, Wallace's medical records show that, when he visited the hospital for his back pain, a doctor prescribed him pain medication. (R. at 539.)

Additionally, this is not a case where the ALJ is entitled to determine Wallace's functional limitations based on commonsense. If anything, commonsense and experience suggests that pain is often different from person to person. But, just because a person's presentation of pain is not typical does not mean the pain is not real.

And, even if the ALJ could rely on commonsense, the focus of his reasoning shows his conclusion is not in line with the Eleventh Circuit's pain standard. The Eleventh Circuit's pain standard does not ask whether the claimant's impairment is <u>actually</u> causing the alleged pain. Instead, it asks whether the claimant's impairment <u>could reasonably be expected</u> to cause the alleged pain. Here, the ALJ focused on Wallace's actual and reported symptoms instead of considering whether his degenerative disc disease <u>could</u> cause the alleged pain. *See Hale v. Bowen*, 831 F.2d 1007, 1009, 1011–12 (11th Cir. 1987) (holding that degenerative disc disease, along with the claimants other symptoms, could be expected to cause

the claimant's disabling pain even though the claimant showed no significant loss of sensory or motor function).

Indeed, the record suggests that Wallace's impairment <u>could reasonably be expected</u> to cause his pain. Wallace says his pain is in his lower back, which is where one would expect it to be with a problem involving the lumber spine. When Wallace has sought treatment for his back pain, a medical professional has prescribed pain medication. (R. at 539.) Conversely, no doctor has denied him pain medication. Additionally, Wallace alleges that his pain is intermittent. He says that it comes in spells about once every two months, and lasts for about two weeks at a time. While this allegation may seem strange, especially when Wallace has not identified the trigger of his attacks, he has reported this cycle to his doctors. (R. at 558.) Commonsense suggests there is something odd about Wallace's alleged pain. This conclusion further reinforces the fact that Wallace's pain <u>could reasonably be expected</u> to result from his degenerative disc disease. Thus, to the extent the ALJ determined that Wallace had failed to meet the Eleventh Circuit's pain standard, the ALJ's decision is based on mere speculation.

In this case, the ALJ erred in determining Wallace's RFC. Either the ALJ erred by misapplying the Regulations (that is, 20 C.F.R. § 404.1529(c)(2)), or he erred in concluding that Wallace's allegations fail to meet the Eleventh Circuit's

pain standard.  Regardless of which route the ALJ took, his error was not harmless.  The vocational expert testified that if Wallace's pain testimony were credited, he would be unemployable.  (R. at 87.)  Because the ALJ erred in determining Wallace's RFC, the decision of the Commissioner is due to be **REVERSED** and **REMANDED** for further proceedings.

IV.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **REVERSED**.  This case is **REMANDED** for further proceedings consistent with this memorandum opinion.  A separate final judgment will be entered.

**DONE** and **ORDERED** this the 1st day of April, 2013.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge